UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

PALMER 67 REVOCABLE TRUST,
F/B/O REZA TOULABI,
BY TRUSTEE RICHARD W. TORHORST,

    Plaintiff,

  v.                                              Case No. 25-CV-490

WALWORTH COUNTY, WISCONSIN,
*et al.*,

    Defendants.

---

## DECISION AND ORDER ON
## DEFENDANTS' MOTION TO DISMISS

---

Palmer 67 Revocable Trust, F/B/O Reza Toulabi, by Trustee Richard W. Torhorst (the "Trust"), sues Walworth County and its Treasurer Valerie Etzel under 42 U.S.C. § 1983 and Wisconsin law relating to the foreclosure and transfer of its tax delinquent property by Walworth County ("County") to the City of Elkhorn ("City"). The Trust alleges Defendants' actions constituted an illegal taking in violation of the Fifth and Fourteenth Amendments and Article I, Section 13 of the Wisconsin constitution. The Trust also alleges a conspiracy claim predicated on the taking. Defendants move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Docket # 25; Docket # 35.) For the reasons explained below, the County's motion to dismiss (Docket # 24) is granted in part and denied in part. Etzel's motion (Docket # 34) is granted.

## BACKGROUND

1.  *Preliminary Matters*

The Trust originally included the City of Elkhorn and Adam Swann, its City Administrator, in the complaint. The Trust agreed to dismiss all claims against the City of Elkhorn as evidenced by the stipulation for dismissal. (Docket # 38.) As such, the City and Swann's pending motions to dismiss (Docket # 17; Docket # 27) are denied as moot.

Walworth County moved to dismiss the original complaint in May 2025. (Docket # 19.) The original complaint has since been superseded by the operative Amended Complaint (Docket # 21), and the County has filed a new motion to dismiss the Amended Complaint (Docket # 24). As such, the County's motion (Docket # 19) is denied as moot.

2.  *Allegations in Amended Complaint*

Reza Toulabi conveyed the real property located at 1750 N. Wisconsin St., Elkhorn, Wisconsin (the "Property") to the Palmer 67 Revocable Trust on July 1, 2013. (Am. Compl., Docket # 21 at ¶ 9; Docket # 21-1, Ex. A.) The Property became tax delinquent, and the taxes, interest, and penalties totaled $23,312.02. (Am. Compl., ¶ 10.) The Trust alleges it did not receive notice of the tax delinquency. (*Id.* ¶ 11.)

The Trust alleges that on February 1, 2023, the County filed a Notice of Commencement of foreclosure proceedings for the Property. (*Id.* ¶ 12.) On February 8, 2023, the United States Postal Service delivered a copy of the notice to 5255 N. Clark St., Chicago, Illinois. (*Id.* ¶ 13.) The Trust alleges that it never received the notice; nor was the USPS form documenting the delivery signed by the trustee or the beneficiary. (*Id.* ¶ 15.) The Trust alleges it therefore did not learn of the foreclosure proceedings until after the Property was conveyed

to the County. (*Id.* ¶¶ 14, 17.) The Property was conveyed to the County by default judgment on June 9, 2023. (*Id.* ¶ 17; Docket # 21-3, Ex. C.)

The Trust alleges that the County subsequently sold the Property to the City of Elkhorn via the Intergovernmental Agreement in exchange for the City paying all delinquent taxes, interest, and related fees. (*Id.* ¶ 20; Docket # 21-4, Ex. D.) The Trust alleges this resulted in the County confiscating the entire Property—valued at $382,000—to satisfy a $23,312.02 debt. (*Id.* ¶¶ 26–27.) The Property was subsequently conveyed to the City via Quit Claim Deed on July 3, 2023. (*Id.* ¶ 25; Docket # 21-6.) The Trust alleges that it learned the Property's title belonged to the City on July 17, 2023. (*Id.* ¶ 28.)

## LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) challenges the sufficiency of the complaint on the basis that the plaintiff has failed to state a claim upon which relief can be granted. A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has interpreted this language to require that the plaintiff plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Ashcroft v. Iqbal*, the Supreme Court elaborated further on the pleadings standard, explaining that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," though this "standard is not akin to a 'probability requirement.'" 556 U.S. 662, 678 (2009). The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citation omitted).

When determining the sufficiency of a complaint, the court engages in a two-part analysis. *See McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011). First, the court must "accept the well-pleaded facts in the complaint as true" while separating out "legal conclusions and conclusory allegations merely reciting the elements of the claim." *Id.* (citing *Iqbal*, 556 U.S. at 680). Next, "[a]fter excising the allegations not entitled to the presumption [of truth], [the court must] determine whether the remaining factual allegations 'plausibly suggest an entitlement to relief.'" *Id.* (citing *Iqbal*, 556 U.S. at 681). As explained in *Iqbal*, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." 556 U.S. at 679. All factual allegations and any reasonable inferences must be construed in the light most favorable to the nonmoving party. *Price v. Bd. of Educ. of City of Chicago*, 755 F.3d 605, 607 (7th Cir. 2014).

## ANALYSIS

The Trust alleges the County violated the Takings Clause by foreclosing on the Property and selling it to the City of Elkhorn for the value of the taxes owed, thereby confiscating the entire 39.02-acre property, valued at $382,000, to satisfy a $23,312.02 tax debt. The Trust alleges it is entitled to the value of the Property that exceeded the amount of taxes owed and was deprived of its opportunity to recoup that excess when the Property was sold via the Intergovernmental Agreement. (Amend. Compl., Docket # 21.) The Trust also asserts a conspiracy claim predicated on the taking.

The County concedes that a government's retention of surplus proceeds from a tax-foreclosure sale constitutes a taking. (Def. Br., Docket # 25 at 4, 7–8.) The County argues,

4

Case 2:25-cv-00490-NJ    Filed 11/24/25    Page 4 of 10    Document 42

however, that because the sale here did not produce a surplus, no taking occurred. (*Id.*) The County also argues that it was under no duty to ensure the Trust received a surplus.

The analysis for the takings claims under the Wisconsin and U.S. constitutions are identical. *State v. Agnello*, 226 Wis. 2d 164, 180 593 N.W.2d. 427 (1999) ("Where . . . the language of the provision in the state constitution is 'virtually identical' to that of the federal provision or where no difference in intent is discernible, Wisconsin courts have normally construed the state constitution consistent with the United States Supreme Court's construction of the federal constitution."); *City of Milwaukee Post No. 2874 Veterans of Foreign Wars of United States v. Redevelopment Auth. of City of Milwaukee*, 2009 WI 84, ¶ 35, 319 Wis. 2d 553, 768 N.W.2d 749 (stating Article 1, Section 13 of the Wisconsin Constitution is "substantially similar" to the Takings Clause of the Fifth Amendment). Because both parties point to *Tyler v. Hennepin County*, 598 U.S. 631 (2023) to support their claims, I begin there.

1. *Tyler v. Hennepin County*

The Takings Clause of the Fifth Amendment provides that "private property" shall not "be taken for public use, without just compensation." U.S. Const. amend. V. In *Tyler*, the Supreme Court considered whether an individual whose property is seized and sold to satisfy a tax debt has a protected property interest in the surplus proceeds once the delinquent debt is settled. *Tyler*, 598 U.S. at 638. There, Tyler's condo had accumulated $15,000 in delinquent taxes and Hennepin County seized the property. The property eventually sold for $40,000 and Hennepin County kept the remaining $25,000 surplus pursuant to state statute. *Id.* at 635. The question before the Court was whether that remaining value was "property" protected by the Takings Clause. *Id.* at 638. While recognizing state law as one important source for defining property rights, the Court explained that it is not, however, "the only source." *Id.* at 638–45.

5

"Otherwise, a State could 'sidestep the Takings Clause by disavowing traditional property interests' in assets it wishes to appropriate." *Id.* at 638. Thus, the Court looked to "'traditional property law principles,'" in addition to historical practice and the Supreme Court's precedents. *Id.* (citing *Phillips v. Washington Legal Foundation*, 524 U.S. 156, 164 (1998)).

The *Tyler* Court traced the principle "that a government may not take more from a taxpayer than she owes" back to the Magna Carta. *Tyler*, 598 U.S. at 639. This doctrine "became rooted" in English law and "made its way across the Atlantic." *Id.* at 640 ("In collecting taxes, the new Government of the United States could seize and sell only 'so much of [a] tract of land as may be necessary to satisfy the taxes due thereon.'") (quoting Act of July 14, 1798, § 13, 1 Stat. 601). The Supreme Court's precedents similarly held "that a taxpayer is entitled to the surplus in excess of the debt owed." *Tyler*, at 642 (citing *United States v. Taylor*, 104 U.S. 216 (1881)). For example, in *United States v. Lawton*, the federal government seized the taxpayer's property due to a delinquent tax bill of $170.50. 110 U.S. 146, 148 (1884). Instead of selling the property to a private buyer, the government kept the property at a value of $1,100. *Id.* at 146. The property's owner sought to recover the excess value, and even though the governing statute did not explicitly provide for a right to the surplus when the government keeps property for itself, the Court held "[t]o withhold the surplus from the owner" would violate the Fifth Amendment and "take his property for public use without just compensation." *Id.* at 150.

Against this backdrop, the Supreme Court concluded that Hennepin County had the authority to sell Tyler's home to recover delinquent taxes, "[b]ut it could not use the toehold of the tax debt to confiscate more property than was due." *Tyler*, 598 U.S. at 639. By retaining the excess value of Tyler's property beyond her tax debt, the county "effected 'a classic taking

6

in which the government directly appropriates private property for its own use.'" *Id.* (quoting *Tahoe-Sierra Preservation, Inc., v. Tahoe Regional Planning Agency*, 535 U.S. 302, 324 (2002)).

  2. *Application to this Case*

The County argues that the Trust has not alleged a takings claim because the County did not receive any surplus funds that exceeded the amount of delinquent taxes because the Property was sold for the value of the tax debt. (Def.'s Br. at 8.) Without the retention of surplus proceeds, the County argues that the Trust fails to show the County retained property in violation of *Tyler* and the Takings Clause. The County further argues that it had no constitutional duty to ensure a surplus existed following the foreclosure and sale. But the County's positions overlooks the central tenet of the *Tyler* Court's holding: that a county government may not take more in value than the debt owed. By doing so, the county effectively takes private property for public use. *Tyler*, 598 U.S. at 647 ("A taxpayer who loses her $40,000 house to the State to fulfill a $15,000 tax debt has made a far greater contribution to the public fisc than she owed.").

Here, the Trust alleges that it owed $23,312.02 in delinquent taxes. The Trust does not dispute the County's authority to seize and sell the Property to settle the delinquency. Rather, the Trust alleges that by contracting to sell the Property to the City of Elkhorn for the value of the tax debt, the County confiscated more than the delinquent debt and deprived the Trust of its equity and any opportunity to obtain the Property's value that exceeded the debt. Moreover, the Trust alleges that the fair market value of the Property at the time of foreclosure was $382,000—a sum far greater than the amount owed. Taking these allegations as true, as I must, the Trust has plausibly alleged a violation of the Fifth Amendment.

7

The County points to Wis. Stat. § 75.69(2), which provides that "the sale or exchange of lands to or between municipalities" is exempt from the usual statutory procedures for the sale of tax delinquent real estate. (Defs.' Br. at 4.) But even so, states "may not extinguish a property interest that it recognizes everywhere else to avoid paying just compensation when it is the one doing the taking." *Tyler*, 598 U.S. at 645. As the *Tyler* Court recognized, the County cannot, under the guise of a state statue, override traditional property rights and take more than the debt owed.

Relying on *Freed v. Thomas*, 81 F.4th 655 (6th Cir. 2023), the County maintains that delinquent taxpayers are only allowed to recoup the excess value of what their property sells for as opposed to its purported fair market value. In *Freed*, the county foreclosed on property to satisfy a $1,100 tax debt. 81 F.4th at 657. When the county sold the property for $42,000, it retained the excess, and the county agreed Freed experienced a taking. *Id.* at 658. Freed, however, argued that the county took his "equity" and owed him the fair market value of the home at the time of the foreclosure sale, approximately $98,000. *Id.* The Sixth Circuit rejected Freed's position, finding that he was only entitled to the difference between the $42,000 sales price and the delinquent debt, as "the best evidence of a foreclosed property's value is the property's sales price, not what is was worth before the foreclosure." *Id.*

The County relies on the Sixth Circuit's rejection of the "equity" theory to reiterate that the Trust is not entitled to the Property's equity but to only the surplus proceeds from a tax-foreclosure, and since no surplus exists here, the County fails to state a takings claim. (Def.'s Reply Br., Docket # 39 at 4–5.) But what amounts to "just compensation" is not pertinent at this stage of the litigation. What matters is that Plaintiff plausibly alleges that the

8

value of the Property taken exceeded the tax debt owed. As such, the County's motion to dismiss the takings claims is denied.

    3.    *Conspiracy Claim*

The County moves to dismiss the conspiracy claim. (Defs. Br. at 9.) The Trust has not responded in opposition to the County's argument. (*See* Pl.'s Br, Docket # 37.) As such, the conspiracy claim is dismissed.

    4.    *Defendant Etzel*

Defendant Valerie Etzel is the County's Treasurer. Etzel has moved separately for dismissal, arguing that no takings occurred and that the amended complaint does not name any causes of action against her. (Docket # 35.) In response, the Trust reiterates its arguments for supporting a takings claim. (Docket # 40.) But as Etzel points out, the amended complaint does not assert a takings claim specifically against her. Rather, the allegations regarding Etzel relate to her role as treasurer and the alleged conspiracy. Because the conspiracy claim is dismissed, so is Etzel as a defendant.

    5.    *Inaccurate Citations*

Finally, the Trust's brief in opposition to the County's motion contains misquoted and plainly inaccurate citations. For example, counsel attributed a direct quotation to the *Tyler* Court that was not from the Court, but from counsel's reply brief in that case. (*See* Docket # 37 at 3 quoting *Tyler* as stating "[e]quity is private property protected by the Fifth Amendment" and *compare with* Geraldine TYLER, on behalf of herself and all others similarly situated, Petitioner, v. HENNEPIN COUNTY, and Daniel P. Rogan, Auditor-Treasurer, in his official capacity, Respondents., 2023 WL 2974504, at *5 ("Equity is private property protected by the Fifth Amendment.").

9

Counsel is reminded of her obligations under Fed. R. Civ. P. 11 to do the necessary due diligence to ensure that representations made to the Court are accurate statements of the law and facts. Counsel falls short of her duties to the Court and to her client when she fails to do so.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the County's Motion to Dismiss (Docket # 24) is **GRANTED in part** and **DENIED in part**. Plaintiff's conspiracy claim is dismissed.

**IT IS FURTHER ORDERED** that Etzel's Motion to Dismiss (Docket # 34) is **GRANTED**.

**FINALLY, IT IS ORDERED** that the remaining Motions to Dismiss (Docket # 17, # 19, # 27) are **DENIED as moot**.

Dated at Milwaukee, Wisconsin this 24th day of November, 2025.

BY THE COURT

_____
NANCY JOSEPH
United States Magistrate Judge